Appellant, Mr. Beaton for the amicus curiae, Ms. Haley for the appellee. Good morning. Good morning, and may it please the Court. My name is Benjamin Beaton, and I'm here at the Court's invitation as amicus on behalf of the appellant's position in this case. We've identified, oh, and I've reserved two names for you, Mr. Beaton, Mr. O'Neal Appellant, and two names for a moment. We've identified three errors in our papers from the Court below. I'd like to start, if I may, with the first, the erroneous exclusion of the 608B evidence regarding the prior acts of untruthfulness by the government's key witness, Mr. Ramsey. These were presented in the braiding materials, and I don't think there is much of a dispute yet at this point of the legal error the district court committed in applying a requirement of a conviction or an admission of culpability to exclude the evidence. The standard... You don't think it's disputed that the trial court made a legal error? I'd say it's nearly undisputed. I recognize the government takes issue in its papers with that, but I believe what you see is that they've moved quickly from Rule 608B, where there could be no mistake that admission or conviction is the only basis to exclude, to the Rule 403 analysis, which gets more attention in the papers. That Rule 403 analysis, I would note, is largely speculative because it didn't occur at the court below. Obviously, if the judge had made a determination that the probative nature of this information substantially outweighed, that would be a different question of error for the court's determination. What did the defense counsel do, either to cite Rule 608B or to point the court to its theory of relevance, or to point the court to what its proper was of what this cross-examination would show if successful? What if any of those things happened in the record? Sure. I think the proper start was clearly the Brady information that was discussed on the record. I am not certain that Rule 608B by its terms was invoked, though the context, I believe, makes clear that this was a prior act probative of untruthfulness that would undermine the testimony that Mr. Ramsey offered. I guess my problem here is that the standard of review we have is abuse of discretion. You're saying that the court made a legal error, but I'm having trouble understanding from the proffer exactly what was intended to be shown and how it was argued that it was even relevant, or how it was to be used. I agree with you, Your Honor. The record is less than clear. In part, though, I believe that's because the district judge and the prosecutor both quickly invoked the wrong rule, this erroneous requirement of conviction or an admission, and that, if you follow the colloquy, it's quite clear that it redirects the nature of the inquiry at that time. But the district court didn't say that. The district court said the opposite at one point during the colloquy. The district court said it doesn't have to be a conviction if it's relevant to bias or something of that nature, right? I believe that is nearly, I nearly agree with that statement, Your Honor. I believe the judge said it does not necessarily, maybe it does not necessarily need to be a conviction or an admission, though that came after the previous statement of the wrong rule. And at the end of the discussion, quite clearly the rule that's articulated by the court is, because there is no conviction or admission, then this would not be a proper subject for inquiry. Well, I guess the problem that I have is that the proffer was never put in the record as to what the evidence was of these acts. You know, what the government made more of a proffer than the defense counsel did with respect to, I think the prosecutor said that the bad check was a check under $500, and I think the government counsel said it didn't have anything to do with real estate. Is that what the proffer was from the government? Well, that's part of it. Defense counsel first identified the second instance of prior untruthfulness, the evidence of a counterfeit check or counterfeit document used to open a bank statement, at which point defense counsel was cut off by the prosecutor who said, no, it was a bad check. That was, I guess, true in part. There was also a bad check incident that was at stake, but there was also the second instance with the counterfeit document used to open the bank account untruthfully. Well, I guess all I'm saying is that that's all we know about that incident from what I see in the papers. Defense counsel didn't say when that happened, what the document was, what the circumstances were of the opening of the account, anything else. We don't know anything else about this. The trial court didn't seem to know anything else about this. And if the person denies it, then the question is, without any proffer as to where this was going to go, why should the trial court have thought that this was going to be a fruitful area of cross-examination at all? Well, of course, it's clear that Mr. Ramsey's denial was inaccurate. And so I don't think that relieves the government of its burden on this point. Why do we say that the denial was inaccurate? Because he was, in fact, charged with uttering a bad check under $500. But the proffer was that there was a warrant that was issued that was never executed, and he never went to court. So he could have said, I never went to court, I didn't know anything about it, and that could have been true because the proffer was that he was never confronted with the charge. I believe that was Mr. Ramsey's response, which I would submit was carefully worded, to say that he didn't recall going to court in Maryland on this. I can find it in the record, counsel, but I'm talking about what the government said. I think on app 464, was there any allegations made against you regarding a bad check or opening a bank account with a bad check? Witness, not to my knowledge. I've never been in front of a judge or received any citation that I know of. And I thought it was clear that this thing was never served on him, right? So what's inaccurate about that? So I don't think an inaccuracy is necessarily required here. The Whitaker case, the Kudlitz case that we cite both say this is a question that the jury gets to hear, even if there is a denial. No, I thought you had made your point that he made an inaccurate denial. I guess my point would be that to the extent the takeaway is that this incident didn't happen, that would be inaccurate. How do we know? There's never been any adjudication of this. He was never even served or prosecuted. How do we know it actually happened? I kind of presume people innocent, right? That's our starting point? Yes, as a matter of his criminal guilt. But under 608B, an arrest warrant signed by the prosecutor I think clearly would satisfy the reasonable basis that a question is probative of untruthfulness. I quite agree that we wouldn't assume that he had been convicted, but under the much more forgiving standard that Rule 608B has for simply cross-examining someone on a question probative of truthfulness, that is something that the jury would be entitled to hear. I guess the other question I had was that under 608B you can't use extrinsic evidence to cross-examine. So I thought when the district court said that it wasn't that there was a rule of requiring admissions of culpability, but that so little was offered here by defense counsel, just this reference to this document, and it's unserved. We don't have any other facts that go around it, that surround it. That once he denied it, you're not going to be able to confront him with that charge in court because of the ban on extrinsic evidence, so there just was nothing more to be done. Isn't that what the district court was ruling? I don't think the district court put it in so many words. As you did, I think that the ruling was that absent a confession or a conviction, then it's not coming in. I don't see that. I mean, I think that's sort of a description of where this process led them to. So we don't have a conviction, so we're not admitting something on that basis. And then we don't have, but he was clear that that's not a requirement when he said it's not a conviction, but does it have to be a conviction if it's a bad act that goes to credibility? So I don't think the district court ever said you have to have a conviction. Obviously, if it were a conviction, that would be a helpful consideration. But when it's not a conviction and it's been denied by the individual and there's no ability to use extrinsic evidence, then what more was the judge supposed to allow absent a proffer? So quite clearly, there is no ability to come with extrinsic evidence. I don't see that on the record we have here as being a part of the analysis. Isn't that what he means? Look, that's what you do. They deny it, and so you're not going to have him admitting to it. And so the only way to prove this is going to be to bring in extrinsic evidence, isn't it? There's nothing more for defense counsel to do? No, Your Honor. I submit that the Whitaker case, the Ketelitz case from Judge Boudin, both explain why it's important for the jury to hear the denial, even if there's not going to be any evidence submitted contrary. Also on this point, it is critical, I think, that this denial would be undergirded by what should have been cross-examination of a counterfeit document that was predetermined by the erroneous rule of law, as well as the exclusion of Snowden's testimony. So the counterfeit check, trying to open a bank account with a counterfeit check, I get that that one actually is more recent. It was closer in time. Correct, 2006. To the incident, and at least seems closer to the type of, somewhat closer to the type of fraud issue in the case. But what wasn't clear to me was that Mr. McCants ever broke it out for the judge. There seemed to be this, he mentions it, and then everyone sort of thinks it's the same thing. And the burden was on defense counsel was it not to say, look, there are two things going on here. And he wasn't asked about that one. And he didn't when the witness came on. So I think isn't the real problem here that Mr. McCants dropped the ball on that second charge. I'm just not sure we've got a ruling from the district court conscious that there were two pieces of evidence at issue. Certainly we do not have that. And I will concede that the record is not as clear as it might be. But you do have on the record a mention of the counterfeit documents, as well as a mention of the bad check. As I noted, I believe the prosecutor intervened to correct, in an attempt to correct the defense counsel to say, no, it wasn't a counterfeit document, it was a bad check. And so perhaps the suggestion by the government is where the conversation was led astray. But again, the burden was on the defense counsel to come forward and show what the evidence is and why it should be admitted. That's true. And on my reading of the record, Your Honor, where the conversation, two events, one, the government's correction about the bad check. Secondly, the invocation of the rule, the erroneous rule, requiring an admission or conviction would be what led the discussion away from where it ought to have been for the defendant. You said at one point, if the judge had ruled under 403, that would be quite a different case. And I guess my question is, isn't 403 sort of baked into 608? That's an interesting question, Your Honor. I would say not to the extent that Rule 403 requires the prejudices substantially outweigh the probative nature. Given Ms. O'Neill's defense that she did not intend to submit false documents, but that this was the work of Mr. Ramsey, evidence regarding Mr. Ramsey's lies about financial conduct go directly to the most important factor in favor of her defense. And the significance that I think is lost in the government's understanding of the prejudice is, yes, there was ample evidence of Mr. Ramsey's culpability in this case and that he had lied in the context of this case. Under 403, the real probative value for the defendant would be that here are other instances in the past where Mr. Ramsey had also seen fit to lie about financial matters, the counterfeit document, the bad check, and then with the invitation to Ms. Snowden to commit to mortgage fraud as well. So that, I would submit, is why under 403, it's even more important to look at the constellation of different misstatements, issues probative of his character for untruthfulness that all went to undermining the prosecution's reliance on Mr. Ramsey in this case. All right. Thank you. Unless there's a question about the sentencing issue, I will sit down. Actually, I had one question about that, and that is, my understanding is your client is due to be released in less than, or not your client, I'm sorry, your amicus, but that Ms. O'Neill is due to be released in less than three months. That's my understanding. And so I'm trying to understand how, even if a new sentencing were to be required. What would it look like? What exactly is involved, because she didn't challenge, nor did her counsel in his sentencing memorandum challenge, supervised release, or there was sort of a vague sentence about the amount of the offense, but nothing specific that I think would preserve a challenge to the restitution order, is there? So I'm trying to figure out. Presumably, she doesn't want a new sentencing that might not depart from the sentencing guidelines. Presumably, no. I agree, Your Honor, that it would be forward-looking, the nature of any resentencing, on what were not in substantial conditions of release that she faces going forward. Obviously, there's also an enormous restitution amount and forfeiture amount facing Ms. O'Neill, probably the rest of her life. That was at issue, the loss amount. And as to your question about preservation, given the unorthodox nature of this sentencing, I'm not sure that Ms. O'Neill would necessarily be held to a strict standard of preservation were she resentenced, represented by a copy of counsel. Well, that's exactly what happens when you choose to represent yourself, right? Of course, and our position is that Ms. O'Neill's decision to represent herself was not valid, knowing, and intelligent from the start. And certainly, the memorandum that Your Honor referenced was one that came in the night before sentencing, didn't really address the government's arguments and was preceded by Ms. O'Neill's counsel. Well, no, it did. It actually did address a number of the arguments, and it was captioned as filed on her behalf. The only discussion was to whether she would choose to represent herself at sentencing, for argument at sentencing, but there was no question that the sentencing memorandum was authorized and submitted with the authorization of Ms. O'Neill by counsel, so she was certainly represented through the filing of the sentencing memorandum. She was still represented, though counsel did make it clear at the time that he was baffled how to proceed because of the instructions that he had received from his counsel. I'm not sure why he was baffled how to proceed with respect to the filing, but his caption is Ms. O'Neill, by and through her attorney, hereby submit this, and he says she would like to argue at sentencing in his sentencing memorandum, so there wasn't any question about this. And so I'm trying to figure out, even almost as a practical matter, was she constructively denied counsel at sentencing, and since she had counsel through the filing of papers, is just the oral argument, what would we do if the only question were to be with the oral argument, which isn't even required? Certainly. That's a good question, Your Honor, and I would say two things. One, we can't know what would have been said at sentencing, which goes to the structural error that we have here. It's so difficult, for precisely the reasons you identified, to assess a sort of harmlessness analysis in the deprivation of right to counsel context. And so I believe there's no reason to presume there wouldn't have been more effective advocacy on behalf of Ms. O'Neill in terms of citations to record evidence of the sort that the government offered at sentencing that one would expect to have seen through representation of counsel at sentencing. And the second part of your point is, I believe implicitly, would the council memorandum in support of sentencing have sufficed? And I would urge the Court not to treat that as sort of full and competent representation right up to the moment where she's relieved of her counsel, given that the memorandum did come in with the headline that the council was baffled with how to proceed because of questions he had about how Ms. O'Neill would like to proceed. So I would not read into this memorandum with confidence that she had been fully and normally represented right up until the moment at which she's relieved of counsel at sentencing. Thank you. Good morning, Your Honors. May it please the Court, Kathryn Kelly on behalf of the United States. Turning back to Your Honors, the first issue, the district court here did not abuse its discretion in prohibiting the defense counsel to question Mr. Ramsey in front of the jury about a 2003 misdemeanor uttering charge and a 2006 allegation that he opened a bank account with a fraudulent check. There's no showing that the Court's ruling was any misunderstanding of Rule 608B or that the Court committed any error in its ruling. It does appear, though, that the prosecutor here perhaps misled the judge. It seems like they move immediately to a 609 kind of analysis. Actually, I believe that the earlier part of the proceedings, it appeared that the prosecutor was somewhat mistaken and it appeared that she believed that you needed to have a conviction in order for it to come in. But the Court very quickly clarified and questioned that on page 462 of the record. The Court specifically asked. It said it's not a conviction, but does it have to be a conviction if it's a bad act that goes to its credibility? The Court was specifically indicating that it was aware of the parameters that you could use a prior bad act under. And here it does fit within 608B. You don't have to have a conviction if you're going to just question someone's credibility with it. In this sort of situation, so despite any incorrect discussions at the beginning of the discussion with the parties in the Court, it was clear that the Court knew and understood the rules. And in addition to that, the Court did not rule in the end, after hearing the voir dire from Mr. Ramsey, that it couldn't come in, those incidents couldn't come in unless there was a conviction. Well, do you agree that the District Court misstated the proper law in making that ruling by requiring either a conviction or admission of culpability? I don't believe so, Your Honor. What the Court said at page 467 was, well, and this is after hearing what Mr. Ramsey had to say about the incidents, said, I mean, unless there's some, counsel has some other information about these allegations in Maryland having been a criminal case and that there was some culpability or found that he admitted culpability based on what he said, I would have to conclude that this isn't an appropriate area to go into. Well, that sounds like, unless this was a criminal case with a conviction or admitted culpability, I'm letting it out. How is that, is that an accurate statement of the law? It's a statement where the Court is saying, and he continues and says, based upon what he said, referring to Mr. Ramsey, based on what's come out in the voir dire, there really isn't any there there. That was my reading of it, was that given what we've just heard in the voir dire, unless there's more. Based upon what he said comes right after, or he admitted culpability, which he didn't. He didn't admit culpability, but in the same vein, during the voir dire, Mr. Ramsey said, I don't know about this incident, the 2003 incident. I was never in front of a judge. I never received notice of anything. And that actually comports with what defense counsel, or Amicus counsel said. So you would agree that if the district court said, there's no conviction and no admission of culpability, so it can't come in, if that's what the district court had said. No conviction, no admission of culpability, it can't come in, that would be an erroneous rule of law. If that was all that the court said, then that sounds erroneous under 608B, because you don't need a conviction under 608B. However, what the court was really saying in whole here is that, unless counsel has some more information about these allegations, based on what Mr. Ramsey said here, it's not an appropriate area to go into, which really does make sense under Rule 608B, because the point of that rule is, it's supposed to be a situation where the jury is presented with information that bears upon the witness's character for truthfulness or untruthfulness. And here, given that Mr. Ramsey has stated in front of the court when he's questioned, that he doesn't even have any information about these incidents, there's nothing for the jury to assess except his denials or his negative answers, and that's just simply not very probative as to his credibility. What do we do about the fact that counsel tried to raise two distinct prior bad acts, the other one being the more recent effort to fraudulently open a bank account, and it was government counsel that told the judge, we're just talking about a bad check here, and sort of derailed that conversation. What do we do with that? There was no limits on what Mr. – I'm sorry, Ms. O'Neill's counsel was allowed to go into. He began speaking about opening a bank account with a bad check, and the government did bring in that there was an uttering charge earlier in 2003. But the court asked the question. You didn't just bring in. I mean, you sort of said, that's what we're talking about here, and then that's the only thing anyone ever talked about after that. Isn't that quite problematic? I don't believe it was because the information was turned over by the government in plenty of time as required, and the defense counsel was the first one to bring up the opening of a bank account with a bad check, and he was never precluded from asking additional questions in regard to that. When the court asked initially about invardering Mr. Ramsey, he specifically asked about both. He said, has there been an allegation made against you regarding a bad check or opening a bank account with a bad check, and the witness said not to his knowledge, that he hadn't been in front of a judge or received any citation that he knew of. And then the court opened up questioning to Mr. McCance, Ms. O'Neill's attorney, after that. And even at the end of the day, this is all occurring, mind you, after Mr. Ramsey's testimony was finished, and they had taken a few questions from the jury on a different matter. And at that point, before Mr. Ramsey was allowed to leave, the court said, is there anything else? Do you want him to come back if there's going to be further questioning? Does he need to come back tomorrow? And Mr. McCance said, no, he's excused from our perspective. So he was given ample opportunity. So had he, had Mr. Ramsey, just to be very clear, when this happened, had the cross-examination of Mr. Ramsey already been completed? Yes, it had been. And the redirect examination, if I'm remembering correctly, Mr. Ramsey's testimony was entirely finished, and Judge Walton at that point was allowing the jury to write some questions, and they were going through them and deciding which ones to ask, which is very telling about how important is this matter to begin with, because this is information Ms. O'Neill's attorney had well before trial. And even though he had used other parts of the government's letters explaining prior acts by Mr. Ramsey, he didn't even use this in his cross-examination of Mr. Ramsey. So this is really a very simple point. And doesn't the trial court have pretty broad discretion with respect to recross or reopening cross-examination? Yes, the trial court has immense discretion in that regard. And given the voir dire that the court did with Mr. Ramsey, did not believe that this was a fruitful area of cross-examination, it certainly didn't give any probative evidence about his truthfulness or untruthfulness character, because he simply didn't know about the allegations. So it doesn't really add anything for the jury to hear denials or saying, I don't know about these incidents from Mr. Ramsey. This is a point in the trial where they've already had ample cross-examination with Mr. Ramsey. They've heard about his plea and his cooperation deal, that he used his own bank account to put on loan documents to make the straw buyers look more wealthy. He had brought Ms. Perez in as a straw buyer, and it had come to the point where Ms. Perez's son didn't even speak to him anymore because he had basically ruined his mother's credit and lied to her, is how Mr. Ramsey put it. So this was a very minor point well after cross-examination was finished here, and if anything it would be cumulative information about Mr. Ramsey's character for truthfulness or untruthfulness. The court didn't misunderstand the rules of evidence in doing so, and simply the defense counsel didn't push for any further voir dire on the 2006 incident, and for all of those reasons we would say that this had no bearing on the outcome of the trial. If the court has any questions about the sentencing issue or anything else, I'd be happy to answer. But otherwise we respectfully request that you affirm the judgment of the district court. Thank you. Thank you. Mr. Beaton, you had used all of your time, but we'll give you back a minute for a rebuttal. Thank you. All my time and then some, I believe. I appreciate it. Just a quick point about the significance of Mr. Ramsey to the government's case. It's hard to cast this, I believe, as both cumulative and unimportant when you consider the interlocking nature of the evidence here and the fact that in the critical issue of trial of Ms. O'Neill's intent, there's only one witness cited in the government's papers, Mr. Ramsey, on which the government relies for its attempt to show harmlessness. So when you consider the impact of the jury on the denial about a bad check charge, denial about a counterfeit document, the denial, well, the testimony from Ms. Snowden about her being solicited to commit a similar mortgage fraud very close in time, it's hard to say that that would not impact the jury's consideration. In the testimony, I was curious as to why you relied on impeachment by contradiction rather than prior inconsistent statement. It's an interesting question because I believe in the government's papers, there's a real emphasis on trying to require a very direct inconsistency, which, frankly, in the decision cited on either side, I don't see this court or other courts requiring a direct two words lining up as yes and no. What I think is clear here and perhaps is the reason— Well, generally, there's an open question on impeachment by contradiction, whether something has to be more direct. But as to prior inconsistent statements, I think that argument isn't made. There's room for a little more room, leeway in determining inconsistency. So I'm just curious as to— In terms of prior inconsistent statement. As to why defense counsel framed it as one, not the other, I'm not certain. Perhaps it was because there was this initial discussion about hearsay, whether this was going to be hearsay as a verbal act of solicitation. I think we've moved past that. But perhaps the locution of contradiction being far removed from hearsay would have explained that. As to the difference here, whether it was cast as one or the other, I'm not sure it makes a tremendous difference given, as I mentioned, the centrality of Mr. Snowden's—I'm sorry, Mr. Ramsey's credibility. But you don't dispute that counsel waived a prior inconsistent statement as a basis for admission. It's just a question of impeachment by contradiction. I don't know if it was waived, but that was not how the evidence was presented ultimately. Thank you. Mr. Beden, I know that you were appointed by the court to represent Ms. O'Neill, and the court thanks you for your assistance.
judges: Brown, Millett, Wilkins